UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WILLIAM BERUBE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:13-cv-00299-GZS |
| | ) |
| WARDEN, DOWNEAST | ) |
| CORRECTIONAL FACILITY, | ) |
| | ) |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Petitioner William Berube has filed a petition (ECF No. 1) pursuant to 28 U.S.C. § 2254, challenging a probation revocation that followed his state court judgment of conviction for theft by unauthorized taking and criminal trespass. *State of Maine v. William E. Berube*, MACSC-CR-2011-00114 (Me. Super. Ct., Was. Cnty, Feb. 17, 2012). (State Court Record at 11, ECF No. 5-1.) In his section 2254 petition, Petitioner asserts claims of ineffective assistance of counsel, judicial bias, excessive drug testing in violation of the Fourth Amendment, and the lack of a meaningful post-deprivation remedy in violation of the Fourteenth Amendment. The State responded, pursuant to the Court's order, and requested a dismissal, arguing that Petitioner failed to exhaust his remedies in the state court. The recommendation is that relief be denied and that the petition be dismissed.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The state court record reveals that in the original criminal proceeding, Petitioner pled guilty, was convicted and sentenced on February 17, 2012. (Record at 11.) The state court sentenced Petitioner to thirty months of imprisonment on count one (theft by unauthorized taking or transfer) with all but 120 days suspended, and 120 days of imprisonment on count two (criminal trespass) to be served concurrently with the sentence on count one. (Record at 5, 11.) The state court also ordered Petitioner to serve two years of probation subject to certain special conditions, one of which was that he not possess or use unlawful drugs. (Record at 5.) Petitioner did not appeal the judgment and did not seek permission to appeal the sentence.

During the course of Petitioner's probation, the State filed three motions to revoke Petitioner's probation. In the first motion, filed in October 2012, the State alleged that Petitioner used an opiate, marijuana, methadone, and benzodiazepine. (Record at 14.) According to the probation officer's supporting affidavit, an officer with the Baileyville Police Department stopped a vehicle in which Petitioner was a passenger, and requested Petitioner submit to a drug test, which test produced a positive result. (Record at 15.)

In the affidavit, the probation officer also asserted the following: Petitioner admitted to the use of opiates, but told the officer that he had a prescription. Petitioner's physician and pharmacy, both designated pursuant to the pharmacy conditions identified as part of the special probation conditions, told the probation officer that Petitioner had been prescribed oxycodone in June 2012. In mid-July, Petitioner tested positive, but told the probation officer that he had just taken the last of the oxycodone and had no more left. Petitioner tested negative in August 2012. (Record at 15.) As to the positive marijuana test result, Petitioner said he had been in contact the day before with

---

[1] Most of the factual background and procedural history presented here is recited from the Court's Order on Petitioner's motion for transcripts. (ECF No. 7.)

someone who had a legal prescription for medical marijuana. Petitioner told the officer he was baffled over the positive test for methadone. Petitioner did not address the positive result for benzodiazepine. (Record at 15.) The probation officer's violation review form included a recommendation for a partial revocation at that point. (Record at 17.)

At his initial appearance in October 2012, Petitioner denied the allegations in the initial motion to revoke. (Record at 14.) The Court granted Petitioner's motion for appointment of counsel, and the Court apparently appointed the same attorney that Petitioner had when he pled to the underlying criminal charges. (Record at 2, 7, 14.) At the probation revocation hearing on December 17, 2012, Petitioner admitted that he had violated his probation conditions. (Record at 8.) The Court continued the matter for sentencing. (Record at 8.)

The State filed the second motion on December 17, 2012, in which motion the State alleged that Petitioner illegally used an opiate. (Record at 8, 18.) At his initial appearance on December 17, 2012, Petitioner denied the allegation, and the Court scheduled a hearing for January. (Record at 8.) The hearing was subsequently continued to February 25, 2013. (Record at 8.)

Before the hearing was conducted, the State filed a third motion to revoke Petitioner's probation. (Record at 8.) In the motion, the State asserted that Petitioner illegally used both morphine and codeine on or about February 5, 2013, and that he illegally used morphine again on or about February 19, 2013. (Record at 19.) In his affidavit, the probation officer states that although Petitioner contested the positive results of the urine screening drug test for morphine, when the sample was subsequently sent to an out-of-state laboratory for testing, the testing revealed the presence of both morphine and codeine. (Record at 21.) The probation officer also stated that on February 19, 2013, Petitioner admitted that he had used morphine the day before. (Record at 21.) Petitioner's initial appearance was held on February 22, 2013. (Record at 8.)

At the hearing on February 25, 2013, Petitioner appeared with counsel. (Record at 22.) The Court considered all three of the pending motions during the hearing. (Record at 22.) At the conclusion of the hearing, the Court revoked Petitioner's probation, and ordered Petitioner to serve twenty-four months in prison. (Record at 22.)

Petitioner filed a petition for state court post-conviction review in May 2013, and moved for appointment of counsel. (Record at 24.) In his request for post-conviction review, Petitioner alleged ineffective assistance of counsel in the probation revocation hearings and claimed that as the result of the ineffective assistance of counsel, he failed to file a request for a discretionary appeal under 17-A M.R.S. § 1207(2). (Record at 27.) Petitioner also alleged judicial bias and excessive drug testing in violation of the Fourth Amendment. (Record at 26-27.)

On June 27, 2013, the state court entered a summary dismissal of Petitioner's post-conviction petition, concluding that the petition related to a probation revocation, which was beyond the scope of Maine's post-conviction review statute, 15 M.R.S. § 2121(2). (Record at 28.) In his section 2254 petition, Petitioner represents that he filed a notice of appeal from the summary dismissal of his state post-conviction petition. (Petition at 5; Reply at 2, ECF No. 6.) However, the last entry on the docket for the post-conviction review reflects the dismissal of Petitioner's motion for appointment of counsel, which followed the summary dismissal of the petition; the docket sheet contains no entry of a notice of appeal from the summary dismissal. (Record at 23.)

Petitioner filed this section 2254 petition in August 2013.

## DISCUSSION

In support of the petition, Petitioner initially alleges ineffective assistance of counsel in the probation revocation proceedings. Specifically, he contends that his attorney (1) failed to present mitigating factors "at sentencing," presumably meaning the probation revocation hearings; (2)

4

promised him that in exchange for his admission of the probation violations, he would receive a nine-month partial probation revocation, rather than the full revocation to which he was eventually sentenced; (3) failed to investigate adequately the probation violations; (4) failed to object to the continuance of the hearing, which failure resulted in a hearing before a judge whom Petitioner claims is biased and unduly harsh; and (5) failed to advise him concerning the proper procedure to pursue, in state court, a discretionary appeal of the probation revocation. (Petition at 5, 10.) Petitioner's remaining allegations are judicial bias, excessive drug testing, and the lack of a meaningful post-deprivation remedy. (Petition at 7-10.) Petitioner's bias contention appears to include an allegation of prosecutorial misconduct. (Petition at 7.)

The State argues that Petitioner's claims must be dismissed because he failed to exhaust all available state court remedies as 28 U.S.C. § 2254(b)(1) requires. (Response at 3-4, ECF No. 5.) In particular, the State contends that Petitioner did not exhaust his state court claims because he failed to file a notice of discretionary appeal, pursuant to 17-A M.R.S. § 1207(2) and M.R. App. P. 19, following the Superior Court's revocation order. (Response at 3.) The State argues that Petitioner is not entitled to pursue his federal habeas claims because he failed to seek relief in state court first, which failure resulted in a procedural default. The State further contends that Petitioner cannot overcome the default.

Ineffective assistance of counsel is a recognized basis for overcoming a procedural default. To succeed on an ineffective assistance of counsel claim, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A district court reviewing such claims need

5

not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. The issue in this case is whether a claim of ineffective assistance in a post-conviction proceeding may establish cause to excuse Petitioner's failure to exhaust his state court remedies. As explained below, Petitioner cannot rely upon a claim of ineffective assistance of counsel to establish cause because there is no constitutional right to counsel in a post-conviction proceeding.[2]

The Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. . . . This rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citation omitted).[3] The Court held that this doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds." *Id.* at 729-30. "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). In *Coleman*, the Court noted that the doctrine is "grounded in concerns of comity and federalism," and addresses the concern that

---

[2] This recommended decision refers to a discretionary appeal of a probation revocation decision generically as a "post-conviction" proceeding, for federal habeas purposes. *See Black v. Romano*, 471 U.S. 606, 610 (1985). This terminology is in contrast to the use of the term "post-conviction," under Maine statutory law, which draws a distinction between a "post-sentencing proceeding" or "post-conviction review," pursuant to 15 M.R.S. § 2121(2), on one hand, and a "probation revocation proceeding," pursuant to 17-A M.R.S. § 1207, on the other. Petitioner's failure to draw the necessary state law distinction led to his procedural default and forms the basis for his allegation of ineffective assistance of counsel, but for purposes of federal habeas review, the term "post-conviction" is intended to encompass a discretionary appeal of a decision to revoke probation.

[3] The Supreme Court has "recognized that 'the adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (quotation marks omitted).

[w]ithout the rule, a federal district court would be able to do in habeas what [the Supreme Court] could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Coleman*, 501 U.S. at 730-31. "[A] state procedural default of any federal claim will bar federal habeas unless the petitioner demonstrates cause and actual prejudice," or "where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Id.* at 748 (quoting *Engle v. Isaac*, 456 U.S. 107, 129, 135 (1982)). The failure to exhaust state court remedies is treated as a procedural default. In *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), the Supreme Court explained: "[a] state prisoner must, as a general matter, properly exhaust his federal claims in state court to avoid having his claim defaulted on procedural grounds." *Id.* at 1414 n.1 (citing *Coleman*, 501 U.S. at 750).

Procedural default is a judicial doctrine, *see Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013), whereas the exhaustion of state court remedies is a statutory requirement.[4] Title 28 U.S.C. § 2254(b)(1) requires that a petitioner exhaust state court remedies unless there is no such remedy or circumstances make the remedy ineffective. The statute states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

---

[4] "The procedural default doctrine, like the abuse of writ doctrine, 'refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions.' A corollary to the habeas statute's exhaustion requirement, the doctrine has its roots in the general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (quoting *McCleskey v. Zant*, 499 U.S. 467, 489 (1991)).

28 U.S.C. § 2254(b)(1). "With certain narrow exceptions, federal courts cannot consider a claim at all, let alone accept new evidence relevant to the claim, if it has not been exhausted in state court." *Cullen*, 131 S. Ct. at 1414.

A claim that is procedurally barred in state court is considered to be exhausted, but the claim is subject to a procedural default analysis in federal court. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). When discussing the exhaustion requirement, the Supreme Court wrote:

> Because "[t]his requirement . . . refers only to remedies still available at the time of the federal petition," it is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law." However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.

*Id.* (citations omitted). Thus, although a state procedural bar may render the federal exhaustion requirement "satisfied," the procedural bar itself prevents federal habeas review of the defaulted claim unless a petitioner can demonstrate cause for the default and prejudice. *See id.*

In this case, Petitioner's opportunity for a discretionary appeal of his probation revocation is now procedurally barred under state law. His post-conviction petition was dismissed summarily, and he did not file a timely probation revocation discretionary appeal pursuant to M.R. App. P. 2(b)(2)(A), which requires appeals in criminal cases to be filed within 21 days of the entry of the judgment being appealed.[5] Because Petitioner is procedurally barred from seeking relief under

---

[5] M.R. App. P. 2(b)(2)(A) states in pertinent part that "the time within which an appeal may be taken in a criminal case shall be 21 days after entry of the judgment or order appealed from unless a shorter time is provided by law." Rule 2 applies to discretionary appeals pursuant to M.R. App. P. 19(b), which states: "The discretionary appeals covered by this rule shall proceed in accordance with the Maine Rules of Appellate Procedure, subject to the modifications stated in this rule or as otherwise required by statute." Both of these rules govern the timing of probation revocation appeals, pursuant to 17-A M.R.S. § 1207(2), which states: "In a probation revocation proceeding in the Superior Court, a person whose probation is revoked may not appeal as of right. The time for taking the appeal and the manner and any conditions for the taking of the appeal are as the Supreme Judicial Court provides by rule."

8

state law, Petitioner's state court remedies are considered exhausted. *See Gray*, 518 U.S. at 161-62.[6]

A petitioner may overcome a procedural default if he or she can demonstrate "cause" and "actual prejudice" sufficient to excuse the default. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011).[7] Constitutionally ineffective assistance of counsel may suffice as cause for a procedural default. *See Coleman*, 501 U.S. at 752. "'So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in [*Strickland*], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

However, ineffective assistance in state post-conviction proceedings cannot constitute cause for a procedural default, because "[t]here is no constitutional right to an attorney in state post-conviction proceedings." *Id.* at 752, 757.[8] The Supreme Court reasoned that when the Petitioner has a constitutional right to counsel, ineffective assistance violates that right, and "the error must be seen as an external factor, i.e., 'imputed to the State.'" *Id.* at 754 (quoting *Murray*, 477 U.S. at 488). Unless the state has a constitutional responsibility to provide counsel, the attorney's errors are not imputed to the state, and the Petitioner must bear the risk of the attorney's error. In that situation, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney

---

[6] Because the claim is considered exhausted pursuant to 28 U.S.C. § 2254(b)(1)(A), the Court need not reach the issue whether there is "an absence of available State corrective process" or whether "circumstances exist that render such process ineffective to protect the rights of the applicant," pursuant to section 2254(b)(1)(B).

[7] This is to be distinguished from citing ineffective assistance as a substantive ground for relief, which is not authorized in a federal habeas case. *See* 28 U.S.C. § 2254(i). See *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012).

[8] The Supreme Court's holding in *Martinez* creates a narrow exception to *Coleman*, but that exception does not apply here. In *Martinez*, the Court recognized that ineffective assistance of counsel in one narrowly-defined post-conviction context, namely the first collateral proceeding at which counsel may bring a claim of ineffective trial counsel, may establish cause for a procedural default. *Id.* at 1315, 1320. The Supreme Court explicitly narrowed this holding and grounded it in equity rather than the Constitution: "The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 1319-20.

is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Id.* at 753 (quoting *Murray*, 477 U.S. at 488).

Pursuant to Maine statute, Petitioner has a limited right to counsel during a probation revocation hearing. *See* 17-A M.R.S.A. § 1206. Section 1206 provides that in such a hearing, "the person on probation must be afforded the opportunity to confront and cross-examine witnesses against the person, to present evidence on that person's own behalf and to be represented by counsel. If the person on probation can not afford counsel, the court shall appoint counsel for the person." 17-A M.R.S. § 1206(4).[9] "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). However, the limited state statutory right to counsel in probation hearings, and even the Supreme Court's holding in *McMann*, do not alter the Court's holding in *Coleman* that the State has no federal constitutional responsibility to provide counsel in post-conviction proceedings. *Coleman*, 501 U.S. at 752-54.

In short, because Petitioner was not constitutionally entitled to court appointed counsel in the probation revocation proceeding, Petitioner cannot rely upon ineffective assistance of counsel to overcome the procedural default. Petitioner thus is foreclosed from seeking relief under § 2254.

Even if Petitioner could rely upon ineffective assistance of counsel to overcome the procedural default, Petitioner could not satisfy the necessary requirements in this case. That is, assuming that counsel's error resulted in the failure to file the discretionary appeal from the probation revocation, Petitioner nevertheless would not prevail because he cannot establish

---

[9] Title 17-A M.R.S. § 1206(4) does not appear to extend the right to counsel to discretionary appeals of probation revocations; it appears to be limited to probation revocation hearings.

10

prejudice,[10] nor could he demonstrate actual innocence. "Prejudice" requires that a defendant "demonstrate 'a reasonable probability that, but for [the alleged] erro[r], the result of the proceeding would have been different.'" *Sawyer v. Whitley*, 505 U.S. 333, 363 (1992) (quoting *Strickland*, 466 U.S. at 694). As an alternative to a showing of cause and prejudice, a petitioner may demonstrate that review is "necessary to correct 'a fundamental miscarriage of justice.'" *Coleman*, 501 U.S. at 748 (quoting *Engle*, 456 U.S. at 135). To demonstrate a fundamental miscarriage of justice, a petitioner "must show that the alleged error *more likely than not* created a manifest miscarriage of justice." *Sawyer*, 505 U.S. at 364. "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). The miscarriage of justice exception has been applied "to overcome various procedural defaults," including "failure to observe state procedural rules" such as filing deadlines. *Id. (citing Coleman*, 501 U.S. at 750).

In this case, because Petitioner admitted to one or more probation violations, the facts would not support a finding of either prejudice or a miscarriage of justice. He thus cannot demonstrate that the outcome would have been different if he had been able to file a discretionary appeal, nor can he demonstrate actual innocence. Accordingly, even if Petitioner could rely upon ineffective assistance of counsel, he would fail insofar as he cannot establish prejudice, and he cannot prove that a manifest miscarriage of justice occurred, on these facts.

### CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of

---

[10] As explained earlier, A petitioner may overcome a procedural default if he or she can demonstrate "cause" and "actual prejudice" sufficient to excuse the default. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011).

appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

April 23, 2014 /s/ John C. Nivison
U.S. Magistrate Judge